# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                   |   |                                   |
|-----------------------------------|---|-----------------------------------|
| UNITED STATES OF AMERICA,         | ) |                                   |
|                                   | ) |                                   |
| v.                                | ) | Crim. Action No. 16-0023-4 (ABJ)  |
|                                   | ) |                                   |
| BREYON LEE,                       | ) |                                   |
|                                   | ) |                                   |
| Defendant.                        | ) |                                   |

## MEMORANDUM OPINION & ORDER

On June 7, 2016, defendant Breyon Lee was indicted on one count of interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951, and he was arrested on June 17, 2016. Indictment [Dkt. # 13]; Arrest Warrant [Dkt. # 14]. On June 20, 2016, the government filed a motion for pretrial detention. Gov't Mot. for Pretrial Detention [Dkt. # 16] ("Gov't Detention Mot."). A hearing was held on the motion on June 21, 2016, and the Magistrate Judge ordered that the defendant be released into the High Intensity Supervision Program ("HISP") with home confinement. Min. Entry (June 21, 2016). Pursuant to 18 U.S.C. § 3145(a), the United States has appealed the Magistrate Judge's decision to release the defendant pending trial. Mot for Emergency Review & Appeal of Release Order [Dkt. # 17] ("Gov't Appeal Mot."). The release order was stayed pending the appeal to this Court. Min. Entry (June 21, 2016). On June 22, 2016, defendant filed his response to the government's motion. Def.'s Resp. in Opp. to Gov't Appeal Mot. [Dkt. # 18] ("Def.'s Opp."). The Court held hearings on the motions on June 23, 2016 and June 28, 2016. Min. Entry (June 23, 2016); Min. Entry (June 28, 2016).

The Court has considered the relevant law, the facts presented in the indictment, the motion and opposition, the evidence presented at the hearings, and the information provided by the Pretrial Services Agency, as well as the statements and arguments of counsel. Based on the record before it at this time, the Court finds by clear and convincing evidence that there is no condition or

combination of conditions that will reasonably assure the safety of the community if defendant is released. Therefore, after consideration of all of the factors set forth in section 3142(g), the Court orders that the defendant shall be detained pending trial.

## BACKGROUND

At the hearing and in pleadings filed before the Court, the government proceeded by proffer based on the indictment, and it presented evidence, including surveillance footage, still photographs, and social media postings. Defendant did not offer evidence, but his father appeared on June 28 to discuss potential living arrangements, and counsel made arguments about the significance of the evidence. Accordingly, the Court makes the following findings of fact:

On December 21, 2015, at 8:33 p.m., four individuals entered the Rite-Aid pharmacy located at 4635 South Capitol Street, Southwest with their faces covered. Gov't Detention Mot. at 4. Surveillance footage shows that one of the individuals hopped the front counter and pointed a gun at the cashier. *Id.* According to an eyewitness, the man told the cashier to give him the money from the register or he would kill him. *Id.* A second individual pointed a second gun at a different eyewitness who was at the counter purchasing items, and he told her to stay down. *Id.* As this was occurring, security camera footage shows an individual the government has identified as defendant Lee hopping over the pharmacy counter, taking several bottles of medicine from behind the counter, and crossing back over the counter. *Id.* The men then left the store. *Id.*

An eyewitness alerted passing Metropolitan Police Department officers to what had occurred and directed the officers to a white BMW parked nearby, which the suspects had just entered. Gov't Detention Mot. at 4. The suspects fled in the BMW into the Barry Farms neighborhood in Washington, D.C., where they bailed out of the car and fled on foot. *Id.* Officers eventually apprehended Gregory Hull, another indicted defendant in this matter, but they did not locate any of the other suspects. *Id.* Inside the BMW, police found three bottles of medicine, at

least two of which appear to have originated at the Rite-Aid. *Id.* Fingerprints belonging to defendant Hull and two other indicted defendants, Anthony Burns and Bradley Lee (defendant Lee's brother), were found in the BMW. *Id.*

Defendant Breyon Lee was later determined to be the source of fingerprints recovered from the spot on the Rite-Aid pharmacy counter where the robber had placed his hand as he vaulted the counter during the offense. Gov't Detention Mot. at 4–5. Additionally, the clothing worn by that individual during the robbery, including "a distinctive jacket with an angled zipper and padded shoulder panels," ripped jeans, as well as the individual's shoes, matched clothing worn by defendant Lee in various photographs on social media and photographs taken of the defendant during a January 2016 arrest for possession of PCP. *Id.* at 5.

The government has also put forth evidence, including surveillance footage and social media postings, that ties the defendant to at least two additional armed robberies of two 7-11 convenience stores on December 12, 2015, as well as evidence that indicates that at a minimum, he received stolen property obtained during a fourth armed robbery of a shoe store. Several social media posts depict defendant associating with other indicted participants in the series of robberies, Gov't Detention Mot. at 5, and the government introduced a December 19, 2015 picture of the defendant, his co-defendant Anthony Burns (who is charged with yet another armed robbery) and three other individuals, all sporting the distinctive and otherwise unavailable sneakers stolen during the shoe store robbery. The shoes in question were not available for public sale until January 2016, *id.*, and the photo was captioned "#deydontcomeouttillnextyear" (sic)." *Id.* There was also cash stolen during the robbery, and co-defendant Burns, standing next to defendant Lee in the photo, is holding up a fan of cash for the camera. *Id.*

Defendant was indicted on June 7, 2016. Indictment. The indictment charges that defendants Breyon Lee, Gregory Hull, and Bradley Lee, took merchandise belonging to a Rite Aid

3

Pharmacy located at 4635 South Capitol Street, S.W., Washington, D.C., "from the custody and possession of employees of that store, against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons." *Id.* at 3.[1]

Defendant was arrested on June 17, 2016. Arrest Warrant. On June 20, 2016, the government filed a motion for pretrial detention. Gov't Detention Mot. At the detention hearing held on June 21, 2016, the government made an oral motion to commit defendant to the custody of the Attorney General, which the Magistrate Judge denied. Min. Entry (June 21, 2016). At the same hearing, the Magistrate Judge granted the defendant's oral motion for release from custody, but stayed the release order pending appeal to this Court. *Id.* Defendant filed his response to the government's motion on June 22, 2016, and the Court held a hearing on the motion the following day. Def.'s Opp.; Min. Entry (June 23, 2016). After the hearing, the Court set a date by which the defendant could submit additional evidence in support of his opposition and a date for a hearing at which the family members with whom he proposed to live with while on home detention were ordered to appear. *See* Min. Order (June 24, 2016). Defendant filed a response and suggested that he could live with his father. Resp. to Order of Court [Dkt. # 19]. At a continued bond hearing held on June 28, 2016, the Court heard from defendant's father, and heard additional argument from counsel. Min. Entry (June 28, 2016). In addition, the government has twice provided additional legal authority in support of its motion. Gov't Suppl. Resp. [Dkt. # 21]; Gov't Suppl. Case Law on Applicability of Section 3142(e)(3)(B) [Dkt. # 22] ("Gov't § 3142 Suppl.").

---

1     The indictment also charges defendants Gregory Hull and Anthony Burns with an additional count of robbery in violation of 18 U.S.C. § 1951, and using, carrying, and possessing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Indictment. Those charges arise out of a November 27, 2015 robbery of a City Beats Shoe Store in Washington, D.C. *Id.* at 2. Defendant Burns is also charged with unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). *Id.* at 2–3. Both of those co-defendants are being held without bond. *See* Min. Entry (Feb. 18, 2016).

4

**STANDARD OF REVIEW**

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. §§ 3142(e)(1), (f)(2)(g). Even if defendant does not pose a flight risk, danger to the community alone is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 754–55 (1987); *United States v. Simpkins*, 826 F.2d 94, 98 (D.C. Cir. 1987).

Congress also specified in the Bail Reform Act that a judicial finding that there is probable cause to believe that the defendant committed certain offenses – including the offense of using or carrying a firearm during and in relation to a crime of violence, or possessing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A) – gives rise to a rebuttable presumption that a defendant is a danger, and that no pretrial condition or combination of conditions will be sufficient to protect the community. 18 U.S.C. § 3142(e)(3)(B).

Once a rebuttable presumption has been triggered, "the presumption operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis in original); s*ee also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (the presumptions in § 3142(e) "are 'rebutted' when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"), quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."), citing *United States v. Matir*, 782 F.2d 1141, 1144 (2d Cir. 1986). While the burden of production may not be heavy, *see United*

5

*States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991), the applicable cases all speak in terms of a defendant's obligation to introduce "evidence."

And, as the court explained in *United States v. Ali*, 793 F. Supp. 2d 386 (D.D.C. 2011), even if the defendant offers evidence to counter the presumption, the presumption does not disappear entirely:

> At oral argument, defendant's counsel posited that the rebuttable presumption functions as a "bursting bubble" that ceases to exist once a defendant produces any credible evidence. Although the D.C. Circuit has not expressly ruled on this issue, circuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence as do judges of this Court.

*Id.* at 388 n.2 (internal citations omitted), citing *United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial."); *see United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely but remains a factor to be considered among those weighed by the district court.'"), quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *Portes*, 786 F.2d at 764 (use of the word rebutted "in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)"), quoting *Dominguez*, 783 F.2d at 707.

As the U.S. Court of Appeals for the Sixth Circuit has explained:

> The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial . . . . To rebut the presumption, therefore, a defendant should "present all the special features of his case" that take it "outside the congressional paradigm."

6

*Stone*, 608 F.3d at 945–46 (internal citations omitted), quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985).

But in the end, while the presumption operates to shift the burden of production, it does not alter the government's statutory burden of persuasion, which is consistent with the presumption of innocence. *Portes*, 786 F.2d at 764. "Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *Stone*, 608 F.3d at 946.

To determine whether the government has carried its burden, the Court must consider: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence," (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Finally, although the D.C. Circuit has not yet addressed the issue, the many circuits that have agree that the district judge should review *de novo* a detention decision rendered by a Magistrate Judge. *See, e.g., United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990) (citing cases from the Second, Third, Fifth, Eighth, and Eleventh Circuits, which all hold that the district court should conduct a *de novo* review of the Magistrate Judge's detention decision); *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001); *United States v. Gonzales*, 149 F.3d 1192 at *1 (10th Cir. 1998); *United States v. Hazime*, 762 F.2d 34, 36 (6th Cir. 1985); *Portes*, 786 F.2d at 761. The Court will follow that procedure in this case.

## ANALYSIS

The government maintains that defendant Lee is subject to pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(A) because the charged offense qualifies as a crime of violence and because there is a serious risk that the defendant will flee. Gov't Appeal Mot. at 5.

There appears to be no dispute in this case that armed robbery in violation of 18 U.S.C. § 1951 qualifies as a "crime of violence" for purposes of section 3142(f)(1)(A).[2]

Defendant admits that "the offense in question is serious," but he opposes the motion on the grounds that there is no allegation that he was one of the individuals using a weapon during the Rite-Aid robbery and that there is no forensic evidence linking him to any of the other robberies. Def.'s Opp. at 1–2, 4. He also points out that his last alleged involvement in the string of robberies was in December 2015, and that he has not been involved in any further criminal activity. *Id.* at 3–4. He asks to be released into the HISP program and to be permitted to reside at his current residence with the mother of his son, or with his father. Def.'s Opp. at 1, 4.

The government has also taken the position that the defendant is subject to the rebuttable presumption in this case because there is probable cause to believe that defendant committed the armed Rite-Aid robbery with others in violation of both the Hobbs Act and 18 U.S.C. § 924(c), which triggers the statutory presumption under the Bail Reform Act. Gov't Suppl. Resp. at 2. The Court agrees that there is probable cause to believe that the defendant committed an offense that triggers the presumption, and it finds that defendant has failed to come forward with sufficient evidence to rebut the presumption if it applies. But even if the presumption of dangerousness does not apply, in consideration of the four factors set forth in section 3142(g), the Court finds that there is clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Accordingly, the government's motion will be granted.

---

2     With respect to whether a Hobbs Act robbery constitutes a "crime of violence" as that term is defined in 18 U.S.C. § 924(c)(3), *see United States v. McCallister*, No. CR 15-0171 (ABJ), 2016 WL 3072237, at *7 (D.D.C. May 31, 2016) (collecting cases).

**I.  The defendant is presumed to be dangerous, and he has not rebutted the presumption in this case.**

The Bail Reform Act creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the . . . safety of the community if the judicial officer finds that there is probable cause to believe that the [defendant] committed . . . an offense under section 924(c) . . . of this title." 18 U.S.C. § 3142(d)(3)(B). The government contends that "the facts and circumstances of the charged robbery of the Rite Aid, which involved the use of two firearms that endangered several customers and store employees, give rise to a rebuttable presumption that Defendant Lee should be detained." Gov't Suppl. Resp. at 2.

It is true that this defendant is not currently charged with a violation of section 924(c); at this time, he is only charged with the robbery in violation of the Hobbs Act. Indictment at 3. But as the court reasoned in *United States v. Bess*, 687 F. Supp. 929, 934 (D.D.C. 1988):

> [T]he facts found by the judicial officer at the detention hearing determine whether the statutory presumption is implicated; . . . the complaint need not allege a violation of one of the particular predicate offenses for the presumption to come into play. If the facts establish probable cause that the defendant has violated 18 U.S.C. § 924(c), the judicial officer should give proper weight to Congress's general factual view that the defendant poses an unreasonable risk of danger to the community when applying the § 3142(g) factors.

So the question is whether this Court can make a finding on this record that there is probable cause to believe that the defendant violated section 924(c) when: (1) there is probable cause to believe, based upon the fingerprint evidence, that he was an active participant in a three co-defendant Hobbs Act robbery at a Rite-Aid on December 21, 2015; and (2) there is probable cause to believe, based on the eyewitness accounts and the surveillance video, that two of the participants either used or carried a firearm during the commission of that crime of violence, or possessed a firearm in furtherance of that crime, in violation of section 924(c); but (3) defendant Lee was not one of the gunmen. In other words, can a defendant be liable as an aider and abettor

9

or a co-conspirator for an alleged violation of section 924(c), which imposes enhanced penalties for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm or who, in furtherance of any such crime, possesses a firearm"? 18 U.S.C. 924(c)(1)(A). And if so, would the presumption of dangerousness attach?

The Supreme Court has held that the government can "make its case" of aiding and abetting a section 924(c) violation "by proving that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Rosemond v. United States*, 134 S. Ct. 1240, 1243 (2014). And the D.C. Circuit has concluded that a defendant who did not actually or constructively possess a firearm may be punished as a principal if the government can show that the defendant conspired in, or aided and abetted, a section 924(c)(1) offense. *United States v. Long*, 905 F.2d 1572, 1577 (D.C. Cir. 1990); *see also United States v. Washington*, 106 F.3d 983, 1011–12 (D.C. Cir. 1977).

Having viewed the videotape of this armed robbery in progress, the Court finds that there is probable cause to conclude that defendant either aided and abetted, or conspired in, the use of a firearm during and in relation to, or the possession of a firearm in furtherance of, a crime of violence. *See* 18 U.S.C. § 924(c). The evidence presented at the June 23, 2016 hearing showed an efficient, well-orchestrated robbery of the Rite-Aid pharmacy. The three men who committed the offense entered the store together, and one of them visibly drew his weapon just as he passed through the doors. The three immediately moved directly to various parts of the store, and the individual whose fingerprints were identified as those of defendant Lee promptly and calmly carried out his role, and then left with the others, who in the meantime, had pointed guns at the store clerk and a customer. Nothing shown on the tape gave rise to the impression that the individual alleged to be defendant Lee was surprised or concerned in any way about the use of the

firearms, and the three perpetrators fled in a single car. So there is probable cause to believe that this defendant committed the uncharged firearms offense.

The government has not pointed the Court to authority for the proposition that under the Bail Reform Act, it may rely upon a vicarious liability theory to establish the commission of an offense that gives rise to the rebuttable presumption under section 18 U.S.C. § 3142(e)(3). Gov't § 3142 Suppl. at 2. But in interpreting another section of the Bail Reform Act, the First Circuit stated that "a conspiracy to commit a crime of violence is itself a crime of violence" under the Act. *United States v. Mitchell*, 23 F.3d 1, 3 (1st Cir. 1994). In other words, the Bail Reform Act "does not require that the defendant himself commit acts of physical violence as a condition precedent to a detention order." *United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002). Because the government has established probable cause to believe that that defendant violated section 924(c) by aiding and abetting or conspiring to commit that offense, the Court could find that the rebuttable presumption prescribed in §3142(e)(3)(B) applies in this case.

If the presumption applies, the defendant bears the burden to come forward with credible evidence that he does not pose a danger to the community. *Alatishe*, 768 F.2d at 371. Defendant points to his lack of any serious prior criminal history beyond certain matters discussed in the Pretrial Service Agency report and in private at the bench, the fact that the evidence connecting the defendant to the as-yet-uncharged additional armed robberies is largely circumstantial at this time, and the fact that, other than an arrest for possession of PCP that was no-papered, there is no allegation that the defendant was involved in any additional criminal activity since the date of the last robbery – December 21, 2015. Def.'s Opp. at 3–4. If he is released to the HISP program, defendant proposes to live either with his father and grandmother or with his girlfriend and the couple's three year old child. *Id.*

11

The Pretrial Services Agency has updated its report in this case several times. Its most recent report, dated June 30, 2016, specifically recommends detention although it finds the defendant to be technically eligible to be placed in the HISP program. The Court finds defendant's original proposal – residing with his girlfriend and the couple's three year old child – to be unsatisfactory given the lack of any real supervision. The Court is also not persuaded that home detention with defendant's father, Brian Davis, Sr., and his grandmother would be adequate. At the hearing, Mr. Davis was quite vague about whether and when either the defendant or his brother, a co-defendant, lived at the house, and his testimony left open the possibility that the defendant was living there at the time of the robberies in question. The Court has concerns that defendant's release to the proposed address would put him back into the very neighborhood to which the perpetrators fled after the Rite-Aid robbery, and where the alleged participants were known to gather. There was also information provided to the Court and the parties in the form of a Pretrial Services Agency Prior Contacts Report that did not reflect well on Mr. Davis's suitability as a custodian, and that is of particular concern given the fact that the defendant Lee's brother, who was also indicted in connection with this robbery, remains at large.

For those reasons, the Court concludes that defendant has not rebutted the presumption of dangerousness in this case.

But even if the Court were to conclude that the defendant has come forward with at least some credible evidence to counter the presumption and show that he does not pose a danger to the community, it would be bound to go on and consider the all of the factors set forth in section 3142(g). And with or without the presumption, the Court finds that a consideration of those factors weighs in favor of detention.

**I.     Putting aside the presumption of dangerousness, and considering only the factors set out in the Bail Reform Act, the Court finds that the defendant should be detained.**

### A.     The Nature and Circumstances of the Offense Charged

In determining whether there are conditions of release that will assure the defendant's appearance and the safety of the community, the Court must first consider "the nature and circumstances of the offense charged." 18 U.S.C. § 3142(g)(1). Section 3142(g)(1) specifically directs the Court to consider "whether the offense is a crime of violence . . . or involves a . . . firearm" in making that assessment. *Id.*

Here, both are true. Armed robbery in violation of 18 U.S.C. § 1951 qualifies as a crime of violence, *see McCallister*, 2016 WL 3072237, at *7, and defendant does not contest that two hand guns were involved. The surveillance camera captured a clear view of one of the robbers violently jerking the cashier back by his collar and pointing a gun directly at his head. The fact that the defendant did not personally brandish one of the two weapons used in the offense is of no moment: the individual alleged to be defendant Lee was plainly an active member of the team. The best outcome, if everything goes as planned during an armed robbery, involves a victim's being placed at risk and feeling terrified for his safety, possibly for years to come, and if things go wrong, someone – or multiple people – could be killed or seriously injured. As defendant himself concedes, "the offense in question is a serious one." Def.'s Opp. at 4. For those reasons, the Court finds that the nature and circumstances of the offense weigh heavily in favor of detention.

### B.     The Weight of the Evidence of Defendant's Dangerousness

The Court must next consider the weight of the evidence against the defendant, 18 U.S.C. § 3142(g)(2), and the fingerprint evidence tying this defendant to the offense is significant. Courts in other circuits, though, have cautioned that a district court assessing the weight of the evidence must not consider the evidence of defendant's guilt, but rather must consider only the weight of the evidence of defendant's dangerousness. *Stone*, 608 F.3d at 948; *see also United States v.*

13

*Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (holding that section 3142(g) "neither requires nor permits a pretrial determination of guilt").

The weight of the evidence of defendant's dangerousness is strong. On the indicted offense itself, the evidence proffered by the government indicates that defendant was a full participant in a violent and dangerous armed robbery, which placed several innocent victims at risk and involved two weapons. When the Court also considers the evidence linking defendant to the two 7-11 robberies, which also involved hand guns and the violent use of force against victims, coupled with his connection to the shoe store robbery or at least, its perpetrators and proceeds, the evidence of defendant's dangerous becomes even stronger. Accordingly, this factor also favors pretrial detention.

## C.  The History and Characteristics of the Defendant

The Court is also required to consider the history and characteristics of the defendant, including his character, family, employment, and criminal history, financial resources, community ties, and record concerning appearance at court proceedings, among other factors. 18 U.S.C. § 3142(g)(3)(A).

It is true, as defendant points out, that he does not have a significant history of contact with the criminal justice system before or after the December crime spree. *See* Def.'s Opp. at 4. There was certain information presented to the Court at the bench on June 28 that was not especially grave, but it was not in any way positive, either. The adult history of traffic infractions that was made a part of the public record shows, at a minimum, a spotty record in terms of appearing for court dates. The government has demonstrated that defendant twice failed to appear for two separate traffic matters, prompting bench warrants to be issued, which he avoided for three months. Gov't Detention Mot. at 8. While defendant does not have a record of substance abuse, the Court

takes note of his January 2016 arrest for possession of PCP.[3] And the Court cannot help but observe that one cannot talk about the defendant's lack of criminal history without first putting aside the evidence of his alleged connection to three or four armed robberies. Defendant's connection with violence may have been short-lived, but it was significant enough to make him dangerous.

In terms of ties to the community, defendant has only been residing at his present address, where he lives with his current girlfriend, the mother of one of his two sons, for three months. He has family in the area, but his father indicated that the defendant did not reside with him consistently, but simply stayed at the house, off and on, on an occasional basis, possibly even during the period when the armed robberies took place. Defendant is not currently employed, and the Pretrial Services report reflects that he has been unemployed for three years. Defendant has not completed high school, nor has he obtained his GED, and the absence of any legal means of support, coupled with the prior failures to appear, and the evidence of the extremely poor judgment on display in the unfortunate photograph, give the Court little to go on. So while defendant's criminal history does not weigh heavily in favor of detention, this factor does not rebut the presumption if it applies or supply any grounds to be particularly comfortable about his release.

### D. The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by the Defendant's Release

Finally, the Court considers "the nature and seriousness of the danger to any person or the community that would be posed" by defendant's release. 18 U.S.C. § 3142(g)(4). And it concludes that the final factor weighs strongly in favor of detention.

---

3   The *Gerstein* affidavit in that case indicates that the defendant was discovered sleeping in a car in an alley near 1300 Stevens Road, S.E., and that when he was roused by police, he fled. When the officers searched the car with the consent of its owner, defendant's brother, they found a bottle containing PCP. Ex. 1 to Gov't Suppl. Resp. [Dkt. # 21-1]. The defendant declined to submit to a drug test after his arrest, and ultimately, the charge was "no-papered." Gov't Detention Mot. at 8 n.1.

With respect to the charged offense, as discussed above, the evidence shows that defendant was part of a group that allegedly planned and executed a violent armed robbery. The robbery was both a serious and violent offense involving the use of two weapons against several victims, and it indicates that defendant would pose a threat to the community were he to be released.

Beyond the charged offense, there is other evidence of defendant's dangerousness. While the D.C. Circuit does not appear to have addressed the issue, other courts have found that a court may consider a variety of sources of evidence of the defendant's danger to the community, separate and apart from evidence relating to the crime charged. *See, e.g.*, *Stone*, 608 F.3d at 953; *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991); *United States v. Quartermaine*, 913 F.2d 910, 917 (11th. Cir. 1990). Indeed, as one court in this district has observed, "[e]vidence of a defendant's dangerousness is in no way limited to evidence of the elements of the crime with which he is charged" – rather, "evidence of a defendant's dangerousness can be virtually unrelated to the charged offense," especially "where the evidence of defendant's dangerousness relates to prior offenses." *Bess*, 678 F. Supp. at 933.

In this case, the Court has seen evidence that connects this defendant to a series of armed robberies and/or a conspiracy to commit a series of armed robberies – evidence that tends to show that he was a participant in two armed robberies in addition to the one charged in the indictment, and that he was at the very least, the recipient of the proceeds of a fourth. In other words, the government has presented evidence to show, and the Court has significant reason to believe, that the charged offense was not an isolated event, but rather, part of a string of organized, planned armed robberies that involved one or more weapons and put innocent people in significant danger.

The Court notes that its finding that there is reason to believe that this defendant participated in a string of robberies is not simply based on the fact that an individual perpetrator of one crime was wearing clothing similar to that worn by an individual perpetrator of another

16

crime. Not only was one of the perpetrators ("suspect 2") of the two 7-11 robberies of similar size and build and wearing the same clothes as the individual identified to be the defendant in the Rite-Aid robbery, but there are other connections too. First, suspect 2 in the 7-11 robberies was with another person who appears to be the same person as his alleged cohort in the Rite-Aid robbery; second, they were with a third person who was wearing clothes connected to the defendant; third, all three followed the same *modus operandi* as was used in the Rite-Aid robbery; and fourth, they left in a vehicle similar to the one connected to the Rite-Aid robbery. The defendant's brazen participation in publicizing his connection to the shoe store robbery on social media also supports a finding of dangerousness, as does the government's representation that this alleged and to-be-indicted conspiracy involved nine armed robberies in all.

The Court also notes that the proposed circumstances of defendant's release – home confinement at the residence he shares with the mother of his child, or at his father's residence – do not instill confidence in the Court that the community would be adequately safeguarded against further violence at the hands of defendant. As the Pretrial Services Representative indicated at the hearing, while defendant would be subject to 24-hour GPS monitoring by a computer, there is no human being monitoring that data, and so Pretrial Services would only become aware of an infraction by the defendant on the next business day. And the Agency is not recommending release.

For all those reasons, the Court finds that the fourth statutory factor weighs heavily in favor of detention.

## CONCLUSION

Both because defendant has failed to rebut the presumption of dangerousness, and because, putting the presumption aside, the factors set forth in the Bail Reform Act counsel in favor of detention, the Court finds that there is clear and convincing evidence that no condition or

combination of conditions will reasonably assure the safety of the community. It is therefore hereby

**ORDERED** that the government's Motion for Pretrial Detention [Dkt. # 16] and its Motion for Emergency Review and Appeal of a Release Order [Dkt. # 17] are **GRANTED**, and the defendant will be held without bond.

**SO ORDERED**.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: July 1, 2016